IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT M. HENDERSON; <br> NATALIE HENDERSON; and <br> RICHARD H. BARONE <br>       Plaintiffs, <br>       v. <br><br> CHARTER OAK FIRE INSURANCE CO. <br> and TRAVELERS INSURANCE COMPANY <br>       Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br> NO. 12-4363 |

**<u>MEMORANDUM</u>**

**Jones, II   J.**                                                                                           **March 21, 2014**

    **I.**      **INTRODUCTION**

The within matter involves a dispute over underinsured motorist benefits relating to an automobile accident that occurred on October 12, 2010. Plaintiffs originally filed a Civil Action Complaint in the Philadelphia Court of Common Pleas, which sought declaratory relief, compensatory damages, and damages for loss of consortium. Defendants removed the action to this Court and at the conclusion of discovery, both sides filed motions for summary judgment. For the reasons set forth below, Defendants' Motion shall be granted and Plaintiffs' Motion shall be denied.

    **II.**      **SUMMARY OF UNDISPUTED FACTS**

On October 12, 2010, Haverford Township employees Robert Henderson and Richard Barone were operating a motor vehicle owned by the Township and insured by Defendants when

1

it was struck by another vehicle that was being operated by Stamatina Mylonas but was owned by Steven Mylonas and insured by Allstate Insurance Company. (Pls.' Stmt. Facts ¶¶ 2-3, 5, 10). Plaintiffs Henderson and Barone were seriously injured in the accident and subsequently sought recovery of damages from the Mylonases and Allstate. (*Id.* at ¶¶ 4, 6). Allstate paid the $25,000.00/$50,000.00 liability limits of coverage available to Plaintiffs and the underlying tort claims were settled with the consent of Defendant Charter Oak. (*Id.* at ¶¶ 6-7). Plaintiffs then sought Underinsured Motorist Coverage benefits from Defendants to further compensate for their injuries. (*Id.* at ¶ 9). At the time of the accident, Haverford Township had an insurance policy with Defendants Charter Oak and Travelers Insurance which included $1,000,000.00 in primary liability coverage and $35,000.00 in combined single limit ("CSL") of uninsured ("UM") and underinsured ("UIM") motorist coverage. (*Id.* at ¶¶ 5-7). Charter Oak paid Plaintiffs the $35,000.00 in Underinsured Motorist Coverage; $17,500 each to Mr. Henderson and Mr. Barone. (Defs.' Stmt. Facts ¶ 8).

### III.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. *Anderson*, 477 U.S. at 248. In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Seigel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1127 (3d Cir. 1995).

"Whether a particular loss is within the coverage of an insurance policy is a question of law which may be decided on a motion for summary judgment in a declaratory judgment action." *Allstate Ins. Co. v. Levell*, Civ. No. 07-3790, 2008 U.S. Dist. LEXIS 101648, at *7 (E.D. Pa. Oct. 31, 2008) (quoting *Lebanon Coach Co. v. Carolina Cas. Ins. Co*., 675 A.2d 279, 283 (Pa. Super. Ct. 1996)). Specifically,

> A district court sitting in diversity must apply the substantive law of the forum state, here, Pennsylvania. In Pennsylvania, the court, not a jury, generally performs the function of interpreting an insurance contract. The initial burden lies with the insured to establish coverage under an insurance policy. When an insurer relies on a policy exclusion to deny coverage, however, it bears the burden of showing the exclusion applies. The court's task is to unearth the intention of the parties as evidenced by the words used in the insurance policy.  The policy must be read as a whole and its meaning must be construed according to its plain language. Words of common usage are to be construed in their natural, plain, and ordinary sense, and a court is free to consult a dictionary to inform its understanding of terms. However, should the policy define certain terms, the court will apply those definitions in construing the policy. Courts must not assume that contractual language was chosen carelessly. When the language of an insurance policy is clear and unambiguous, a court must enforce that language.

*Id.* at *9-11 (citations omitted).

**IV.     Discussion**

    a.  **The Policies**

Under Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), insurers must offer to its insured parties UM and UIM coverage equal to bodily injury liability limits. The insured parties may select UM/UIM at limits equal to or lower than the amount of bodily injury liability limits or may reject UM/UIM coverage altogether. Purchase of UM/UIM coverage is optional. 75 Pa.C.S.A. § 1731.[1] According to Section 1734 of the MVFRL, the named insured may request in writing to lower the limits of UM/UIM coverage below the amount of bodily injury liability limits coverage. 75 Pa.C.S.A. § 1734.

Plaintiffs herein assert the Township's selection of lower limits for the 2010-2011 policy year does not comply with the requirements of Section 1734 of the MVFRL because there is not a specific amount designated *in writing*, and thus, there is no effective selection of $35,000.00 in lower limits. (Pls.' Mot. Summ. J. ¶¶ 36-38). Defendants maintain that the Township intended to select $35,000 CSL for UM/UIM Coverage for the 2010-2011 year and that Charter Oak/Travelers accepted the Township's selection of lower limits as valid and in compliance with Section 1734 of the MVFRL (Defs.' Stmt. Facts ¶¶ 32-33).[2] As such, Defendants are asking this Court to enforce the terms of the insurance contract that the insurer and insured knowingly and intentionally entered into. (Defs.' Summ. J. Br. pp. 16-17).

---

[1] **75 Pa.C.S.A. § 1731(a) Mandatory offering.--**No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverage is optional.

[2] For purposes of the instant analysis and ease of citation, this Court will reference the applicable policy documents as contained in Defendants' briefing.

Haverford had a policy with Travelers for six years. However, the two policy applications currently under consideration are the 2008-2009 application for the year of the current policy's inception and the 2010-2011 supplementary application for renewal of the policy during the year the accident occurred.

The August 1, 2008-August 1, 2009 application for Travelers contains a section titled "Uninsured and Underinsured Motorists Coverage Selection/Rejection," which provides explanations and instructions for selecting lower limits or wholly rejecting UM/UIM coverage. The language explains that under Pennsylvania law,

> You may reject Uninsured or Underinsured Motorist Coverage, or you may purchase Uninsured or Underinsured Motorist Coverage with limits equal to your Bodily Injury Liability Limits or select lower limits, but not less than the minimum limits required by statute ($15,000 each person/$30,000 each accident; or $35,000 each accident, combined single limit) (CSL)).

(Defs.' Mot. Summ. J., Ex. B at B0011).

The same document contains an additional notice:

> **NOTE:** Your automobile liability or motor vehicle liability policy will <u>automatically</u> include Uninsured and Underinsured Motorists Coverage at the same limits as the policy Bodily Injury Liability Limits <u>unless</u> you reject the coverages or select lower limits on this application.

*(Id.)* (emphasis in original).

The Supplementary Commercial Automobile Application for the August 1, 2010-August 1, 2011 policy year - the year the accident occurred - contains the same language cited above. (Defs.' Mot. Summ. J., Ex. D at B0024).

The 2008-2009 application also contains a section titled "Selection of Lower Limits of Underinsured Motorists Coverage," which instructs the insured to "Please make selection below <u>only</u> if you wish to select Underinsured Motorist Coverage at limits lower than your policy Bodily Injury Limits." (Defs.' Mot. Summ. J., Ex. B at B0014) (emphasis in original). Below

5

this is a list of various options from which the insured can select different amounts of lower limits. The first listed option reads:

> Underinsured Motorists Coverage at the minimum limits. The Uninsured Motorists Coverage limits will be either split (each person/each accident) or a combined single limit (CLS), consistent with the Bodily Injury Liability Limits on your policy.

(*Id.*).

Next to this text is a symbol that is circled to designate the selection of these limits, with a handwritten notation that reads "$35,000." (*Id.*) Below this option, the application reads: "Other limits greater than the minimum limits, but less than your policy Bodily Injury Liability Limits" and provides eight specific numerical amounts ranging from $50,000 each accident (CSL) to $1,000,000 each accident (CSL), followed by a blank line for the insured to write in a different amount not listed. (*Id.*) This section is dated August 19, 2008 and is signed by the first named insured Larry Gentile, the Township Manager. (*Id.*) The same circled symbol and handwritten "$35,000" appears next to similar text titled "Selection of Lower Limits of Uninsured Motorists Coverage." (*Id.* at B0012) This section is also signed by Larry Gentile and is dated August 19, 2008. (*Id.*)

Plaintiffs concede that the selection of lower limits of $35,000.00 CSL in the 2008-2009 application was a valid selection. (Pls.' Mem. Law, p. 10). However, Plaintiffs claim this selection only pertained to the 2008-2009 policy year and it became void the following year. (*Id.*)

The Supplementary Commercial Automobile Application states in pertinent part: "The coverage rejections or selections indicated by you on this application will apply on the policy or policies in effect at the time this application is executed, ***and will apply to all future renewal***

*policies until you notify the Company **<u>IN WRITING</u>** of any changes*." (Defs.' Mot. Summ. J., Ex. B at B0011, Ex. D at B0024) (emphasis provided in original and added).

While Haverford Township was not required to submit an application every renewal year, it did fill out the Supplementary Commercial Automobile policy applications for 2009-2010 and 2010-2011. (Pls.' Stmt. Facts ¶ 22). Under the heading "Selection of Lower Limits of Underinsured Motorists Coverage" of the 2010-2011 application for renewal of the policy, are the same instructions from the 2008-2009 application cited above, directing the insured to only make a selection if he or she wished to select UIM coverage lower than the Bodily Injury Liability Limits. (Defs.' Mot. Summ. J., Ex. D at B0027). Below this instruction is the same option listed in the 2008 application:

> Underinsured Motorists Coverage at the minimum limits. The Uninsured Motorists Coverage limits will be either split (each person/each accident) or a combined single limit (CSL), consistent with the Bodily Injury Liability Limits on your policy.

(*Id.*).

Next to this option is a box containing an **X**, signaling the Township's selection of these "minimum limits" for UIM coverage. (*Id.*). The same list of specific numeric options and a blank line from the 2008-2009 application appear below the option for minimum limits. (*Id.*). These sections on both pages for both UM and UIM coverage are signed by the first named insured Larry Gentile, and dated October 4, 2010. (*Id.* at B0025, B0027). However, unlike the August 1, 2008-August 1, 2009 policy year application, no handwritten text or numbers appear on either of these pages other than the signatures and dates. (*Id.*).

Lastly, included in each of the Travelers applications was a Notice prescribed by Section 1791 of the MVFRL. (*Id.* at Ex. B B0009, Ex. C at B0017, Ex. D at B0022). Part of this Notice reads: "Your signature on this notice or your payment of any renewal premium evidences your

actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected." (*Id.*).

### b. Applicable Limits

The only disputed matter in this case is whether Haverford Township's selection of lower limits in UIM coverage for the 2010-2011 policy year was valid and in compliance with Section 1734 of the MVFRL. Defendants claim the selection of $35,000.00 in UIM coverage was an effective selection in writing, while Plaintiffs maintain the selection did not comply with Section 1734 and that the policy automatically defaulted to include UM/UIM coverage at the same limits as the Bodily Injury Liability Limits (here, $1,000,000.00). (Pls.' Mot. Summ. J. ¶ 40). Thus, Plaintiffs assert they are entitled to $1,000,000.00 in UIM coverage benefits from Defendants. (*Id.*)

As mentioned above, under Pennsylvania law, insurers must offer UM/UIM coverage equal to the amount of bodily injury liability limits to their insured. 75 Pa.C.S.A. § 1731. The insured, through written request, can choose lower limits of UM/UIM coverage or can reject UM/UIM coverage.  75 Pa.C.S.A § 1734.  If the insured fails to choose lower limits or reject coverage altogether, the UM/UIM coverage automatically defaults to the same amount as the insured's bodily injury liability limit. *Blood v. Old Guard Ins. Co.,* 934 A.2d 1218, 1226 (Pa. 2007) ("The insurance company's obligation to issue a policy with [UM/UIM] coverage in an amount equal to the policy's bodily injury liability coverage is not relieved unless it has received such a written request.").

### i. Specification of Coverage Amount

Plaintiffs claim that under Section 1734, a valid request for lower limits must be signed and must have an express designation of the amount of UM/UIM coverage desired. (Pls.' Mot.

Summ. J. ¶ 30) (citing *Lewis v. Erie Insurance Exchange*, 793 A.2d 143 (Pa. 2002)); *but see Fire & Cas. Co. of Conn. v. Cook*, 155 F. App'x 587, 593 (3d Cir. 2005) (where Third Circuit court notes this portion of *Lewis* is dicta). Although Plaintiffs concede that the 2008-2009 selection of UIM coverage was valid, they claim the selection of lower limits in the 2010-2011 application was legally insufficient because, unlike the 2008-2009 application, there was no handwritten "$35,000" included on the page. (Pls.' Mem. Law, p. 10).

Unlike Section 1731 of the MVFRL, all that is needed to select lower limits of UM/UIM coverage under Section 1734 is a request in writing. This "writing" may take the shape of various forms. *See State Farm Mut. Auto. Ins. Co. v. Vollrath*, 132 F. App'x 414, 417 (3d Cir. 2005) (the insured continued to pay lower premiums reflecting lower limits of UM/UIM coverage for a period of years); *Young v. State Farm Mut. Auto. Ins. Co.*, 54 F. App'x 365 (3d Cir. 2002) (insured checked a box indicating the selection of "15/30" under a section of the policy titled "Underinsured Motor Vehicle Limits" and wrote her initials there); *Orsag v. Farmers New Century Ins.*, 15 A.2d 896, 897 (Pa. 2011) (the insured filled in UM/UIM coverage amounts by hand on blank spaces on the application and signed the form); *Blood v. Old Guard Ins. Co.*, 934 A.2d 1218, 1224 (Pa. 2007) (insured marked an "X" in the space next to a pre-printed specific dollar amount on the application along with the first named insured's signature).

As the Third Circuit noted in *Vollrath*, the two requirements for a valid written request for lower limits of UM/UIM coverage are: "(i) the insured had notice of his rights under the MVFRL; and (ii) the insured voluntarily requested in writing that the limits of his UM/UIM coverage be lowered." 132 F. App'x at 416. In the present case, the Township had notice of the rights and options provided under the MVFRL through the "Important Notice" provided by Defendants as mandated by Section 1731. *See Shape v. Allstate Ins. Co.*, 791 F. Supp. 109, 111

(M.D. Pa. 1992) ("An insurer's signature on the notice establishes a conclusive presumption that he has actual knowledge of the coverage available to him under the MVFRL."). Although this Notice allows for the presumption that the Township had notice of its rights and knowledge of its selections, this presumption alone is not sufficient to satisfy the writing requirement of Section 1734. There must also be an actual written request for lower limits from the insured. *State Farm Mut. Auto. Ins. Co. v. Gillespie*, 152 F. App'x 201, 204. Here, the Township has satisfied this requirement by marking an "X" in the box designating the selection of "minimum limits" under the section titled "Selection of Lower Limits of Underinsured Motorists Coverage." This clearly demonstrates the Township's intent to reduce the amount of UIM coverage. Moreover, the signature on the UIM Selection form and the payment of premiums for $35,000.00 CSL in UIM coverage is further evidence that $35,000.00 in UM/UIM limits were selected by the Township. *Gillespie*, 152 F. App'x at 204 (citing the District Court's observation that "numerous courts have held that an insured requests lower UIM limits in writing when he has either remitted checks to the insurer for the lower amount or signed a form electing to retain lower UIM coverage limits.").

Plaintiffs call attention to the fact that there are no "minimum limits" of UM/UIM coverage required by statute in Pennsylvania. (Pls.' Mot. for Partial Summ. J. ¶ 39); *Fire & Cas. Co. of Conn. v. Cook,* 155 F. App'x 587, 597 (3d Cir. 2005). In fact, UM/UIM coverage is optional. *Cook*, 155 F. App'x at 597. However, Defendants assert that $35,000.00 CSL is considered "minimum limits" by many commercial insurance companies based on the definition of "financial responsibility" under the MVFRL:

> **"Financial responsibility."** The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident

10

and in the amount of $5,000 because of damage to property of others in any one accident. The financial responsibility shall be in a form acceptable to the Department of Transportation.

75 Pa.C.S.A. § 1702; (Defs.' Resp. Pls.' Mot. ¶ 54).

Plaintiffs' observation is correct; the statute does not discuss any minimum limits of coverage and UM/UIM coverage and this coverage is optional. *Cook*, 155 F. App'x at 597. Accordingly, if the application and selection form only included the term "minimum limits" without defining it using specific designated amounts, the selection of "minimum limits" would not be a valid writing in compliance with Section 1734. However, that is not the case here. The 2010-2011 policy application in question included a box to check to select the "minimum limits" of UIM coverage *and those "minimum limits" were defined on another page within the same document; namely, "$15,000 each person/$30,000 each accident or $35,000 each accident, combined single limit."* (Defs.' Mot. Summ. J., Ex. B at B0011) (emphasis added).

The application's use of the term "minimum limits" is not fatal to Defendants' case. In fact, the Pennsylvania Superior Court in *Hartford Ins. Co. v. O'Mara* explicitly determined as follows:

> Upon our reading of Section 1734, we cannot agree that Section 1734 dictates the particular language that the parties must utilize to accomplish a valid request for the reduction of uninsured and underinsured motorist coverage limits . . . To comply with Section 1734, the language utilized need only convey an insured's desire to purchase uninsured and underinsured coverage in amounts less than or equal to bodily injury limits and the amount of the requested coverage.

907 A.2d 589, 603 (Pa. Super. 2006).

In *O'Mara*, one of the options on the selection form for UM/UIM coverage was for the "[m]inimum amount available ($15,000 per person/$30,000 per accident)." *Id.* at 598. There was a handwritten X next to this selection and this form was signed by the first named insured. *Id.* The *O'Mara* court ruled that "[t]his form, *viewed as a whole*, indicates Mrs. O'Mara's decision to

11

select uninsured and underinsured coverage in an amount less than the amount of her liability limits, namely, $15,000 per person and $30,000 per accident." *Id.* at 603-04 (emphasis added). Accordingly, the court found this to be a valid selection of lower limits that complied with the mandates of Section 1734.

In the present case, the Township's intent to purchase lower limits of UM/UIM coverage is clearly conveyed when viewing the instrument as a whole. The Township selected "minimum limits" which was defined with specific numeric amounts, just as in *O'Mara*. The only difference in the present case is that the amounts were defined on a preceding page, rather than on the same page. This does not affect the writing's validity. The Township's selection of minimum limits equaling $35,000.00 CSL in UM/UIM coverage is a valid writing under Section 1734 of the MVFRL.[3]

### ii. Compliance with Section 1734

Plaintiffs further assert that the Township's selection of lower limits is invalid because the text selected for lower limits of Underinsured Motorist Coverage contained the terms "uninsured" and "underinsured" in the same section. ("Underinsured Motorists Coverage at the minimum limits. The Uninsured Motorists Coverage limits will be either split (each person/each accident) or a combined single limit (CLS), consistent with the Bodily Injury Liability Limits on your policy.") (Pls.' Mot. Summ. J. ¶¶ 47-49; Defs.' Mot. Summ. J., Ex. D at B0027). The word "Uninsured" in the section for Underinsured lower limits is present in both the 2008-2009 and

---

[3] This Court further notes that within the Declarations Page of the 2010-2011 policy, the UM/UIM limits are clearly written as $35,000 and are cross-referenced in Section II(C) (discussing "Limit of Insurance"), as well as in the UM/UIM Schedules that are part of the policy. (Defs.' Mot. Summ. J., Ex. A at POL 0017, 0023, 0035 & 0039). *See Norco v. Allstate Ins. Co.,* Civ. No. 11-cv-1453, 2012 U.S. Dist. LEXIS 128343, at *30 (W.D. Pa. July 17, 2012) (court utilized declarations page of insurance contract to determine whether a plaintiff was a "named insured" under the policy).

2010-2011 applications in the section titled "Underinsured Motorist Coverage," with the subheading "Selection of Lower Limits of Underinsured Motorist Coverage." (Defs.' Mot. Summ. J., Ex. B at B0014; Ex. D at B0027). Plaintiffs claim this makes the option confusing and misleading, thus making the Township's selection invalid. (Pls.' Mot. Summ. J. ¶¶ 47-49). Defendants argue this is merely a typographical error and does not change the fact that the Township knowingly and intentionally selected the option of UIM coverage at the "minimum limits" which are defined elsewhere in the document. (Defs.' Resp. Pls.' Mot. ¶¶ 47-48).

The Third Circuit has stated that "[w]hen resolving a contract dispute, the initial determination is whether the contract is ambiguous concerning the dispute between the parties[.]" *Sumitomo Mach. Corp. of Am., Inc. v. AlliedSignal, Inc.*, 81 F.3d 328, 332 (3d Cir. 1996). A contract is ambiguous if it is reasonably susceptible of more than one meaning. *Id.* "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer. Unambiguous language, however, must be given effect." *Mark I Restoration SVC v. Assurance Co. of Am.*, 248 F. Supp. 2d 397, 402 (E.D. Pa. 2003) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (1999)). Additionally, this Court must not "distort the meaning of the language or resort to a strained contrivance in order to find ambiguity." *Id.* Instead, it must seek to determine "the intent of the parties as manifested by the language of the written instrument." *Municipality of Mt. Lebonon v. Reliance Ins. Co.*, 778 A.2d 1228, 1231-32 (Pa. Super. 2001).

Plaintiffs argue that use of the terms "uninsured" and "underinsured" in the same section makes the option ambiguous, thereby rendering this selection invalid. This Court finds otherwise. The apparently inadvertent insertion of the word "uninsured" in the section for underinsured lower limits occurs on a page that is expressly titled "Underinsured Motorist

13

Coverage" and under the heading "Selection of Lower Limits of Underinsured Motorist Coverage."  This appears to be nothing more than a typographical error. The presence of this error on this page does not make the minimum limits option vulnerable to different meanings, especially since "minimum limits" has the same meaning for both UM and UIM coverage. Additionally, with the exception of that single word, the remainder of the page discusses UIM coverage, not UM coverage.

The Notice signed by the Township pursuant to Section 1791 also triggers the presumption that the Township had full knowledge of their selected coverage limit. *Hayes v. Harleysville Mut. Ins. Co.*, 841 A.2d 121, 126 (Pa. Super. 2003) ("There is a presumption that an insured had knowledge of their [sic] UIM coverage limit if the insurer issued an Important Notice pursuant to 75 Pa.C.S.A. § 1791, and the insured has made premium payments following the receipt of the Important Notice."). The Township only paid premiums for $35,000.00 in UIM coverage and selected the "minimum limits" defined elsewhere in the Application.  In light of these factors, this Court cannot conclude that Defendants should pay $1,000,000.00 in UIM benefits when the Township only paid premiums for $35,000.00 in UIM coverage and selected the "minimum limits" defined elsewhere in the Application, with full acknowledgement of the Notice. *See Gillespie*, 152 F. App'x 201 at 206 ("[I]n view of Mr. Gillespie's payment of reduced premiums over a period of nearly 16 years, we find that he did thereby elect in writing the lower limits of UIM coverage. In short, the defendants are entitled to what they paid for - $15,000 in UIM coverage.").

Accordingly, existence of the word "uninsured" in a section of the policy discussing "underinsured" coverage does not negate the Township's selection of $35,000.00 CSL in UIM coverage.

### iii. Intent of Insured and Insurer

Lastly, Plaintiffs urge this Court to find that the subjective intent of both the insurer and insured of the insurance policy to include $35,000.00 CSL in UIM coverage is irrelevant and to not consider the affidavits of the Township Manager and the Broker of Record. (Pls.' Mot. Summ. J. ¶¶ 66-68, 70-72). In support of this argument, they rely on *Fire & Cas. Co. of Conn. v. Cook*, wherein the court noted that "Atlantic Express's efforts to get us to focus on its intent require us to close our eyes to the statutorily prescribed method for expressing that intent. We obviously cannot do that. Thus, extrinsic evidence of Atlantic Express's intent is irrelevant." 155 F. App'x 587, 594 (3d Cir. 2005); (Pls.' Mot. for Summ. J. ¶ 68).

As Defendants correctly point out, *Cook* conceded that there was no signed request for lower limits. *Id.* at 589 ("[Atlantic Express's CFO] did not request any reduction in UM limits on the coverage selection form. The applicable box to indicate that request was left blank."). *Cook* stands for the proposition that evidence of intent to select lower limits cannot overcome the fact that no actual selection was made, whereas in the present case, a selection *was* made. Plaintiffs are not arguing there was not a selection; they are arguing that the selection did not comply with the requirements of Section 1734.

Directing its focus solely within the four corners of the *entire* policy at issue, this Court finds it clear that Defendants elected $35,000 in UM and UIM coverage and that their election of same is unambiguous.

## V.     Conclusion

For the reasons set forth hereinabove, Defendants' Motion for Summary Judgment shall be granted and Plaintiffs' Motion for Summary Judgment shall be denied.

An appropriate Order follows.

                                                            BY THE COURT:


                                                             /s/   C. Darnell Jones, II         J.